VanDyke, Appellant, *v.* O'Neill.

Argued January 20, 1941.

*Julian W. Barnard,* for appellant.

*Arthur W. Bean,* of *Smillie & Bean,* for appellee, was not heard.

OPINION BY MR. JUSTICE MAXEY, March 24, 1941:

The plaintiff filed a bill in equity asking for the re-conveyance to him of certain real property and for an accounting. He is a widower, 75 years of age, and the defendant is a widow and the sister of plaintiff's wife, who died in 1930. Defendant in 1913 because of domestic difficulties left the home of her husband and made her home with the plaintiff and his wife. She resided in plaintiff's home until May, 1939. This home consisted of a dwelling house in Norristown. Before plaintiff retired he was employed by a railroad with a salary of about $225.00 a month. After the death of his wife, it was agreed by him and defendant that the latter should continue to reside with his family and should take charge of the household and the financial accounts in the same manner that plaintiff's wife had done during her lifetime. Plaintiff thereupon delivered to defendant all of his papers, including the deed for his property, and all of his receipts of money, including all of his salary up until the time of his retirement from the railroad and after his retirement he gave her all of his retirement pay, all of this to be used for the maintenance of his household and to keep the surplus for the plaintiff. In 1936 plaintiff's health failed. The bill sets forth that "plaintiff has at the present time very satisfactorily recovered from his protracted illness, but remains in a weakened physical condition."

On September 3, 1936, plaintiff executed a deed of conveyance to defendant for his house and lot in Norristown. This deed was duly recorded on September 4, 1936. In his bill plaintiff claimed that he "never had any knowledge, or comprehension, or never knew, prior to his ascertaining the fact in the Spring of 1939, that

he had signed or executed . . . a deed of conveyance conveying said property to the defendant."

On May 24, 1939, defendant left the home of plaintiff. Defendant had opened an account in the Norristown-Penn Trust Company in the joint names of plaintiff and defendant with rights of survivorship in defendant. This account in May, 1939, had a credit balance of approximately $1,500. A similar account had been opened by defendant in another bank which contained a balance of $1,200.

Defendant's answer denied (1) the allegations of plaintiff's mental incompetence, (2) "that there was continuously administered to him sedatives and drugs, and (3) that he had no knowledge until 1939 that he had executed the deed in question." Defendant averred that "from May of 1936 until May of 1939, plaintiff was at all times completely competent mentally and was at all times able to comprehend and understand everything." She pleaded that "it was plaintiff's intention to provide for the defendant by reason of her care of him and his household and it was his intention in 1936 and at all times thereafter until the spring of 1939 that the defendant should be the owner" of the real estate in question. She declared that in September, 1936, it was agreed that the bank accounts "should be put in their joint names so that either the plaintiff or defendant could draw checks on the account to pay the various bills for the running of the household and for the expenses of the plaintiff's illness; . . . in May of 1939 there was a credit balance of approximately $1500.00" in one account and "a credit balance of approximately $1200.00" in another bank. She averred "that although both of these accounts stood in the joint names of both plaintiff and defendant, she voluntarily delivered the said bank books for the said accounts to the plaintiff in the spring of 1939, giving up all of her rights in the said accounts."

The chancellor made, inter alia, these findings of fact: "During August and September, 1936, the plaintiff be-

lieved that he did not have long to live. . . . During the summer of 1936, . . . plaintiff told the defendant that he wanted her to have his property . . . for her kindness to him. . . . The defendant did not think he was going to die, and refused to send for" a real estate agent as plaintiff had requested. On September 2, 1936, when a real estate agent called on the plaintiff at his request, he told him that he (the plaintiff) had been ill, that he wanted to give his home to defendant because she had done so much for him, and asked him to prepare the papers that day. The following day the agent returned to the house with a justice-of-the-peace. He brought with him a deed prepared as instructed. It was explained to the plaintiff that "they were there to have it executed and acknowledged, and further that when plaintiff signed the deed and it was recorded plaintiff gave up all claim to the property." Thereafter, plaintiff signed the deed conveying his home to the defendant and acknowledged the same. After these parties left, plaintiff said to defendant: "Annie, the place is yours. I want you to have it for what you done for me." Plaintiff told his brother-in-law at least three times that he had turned over his house to the defendant, twice in 1937 and once in the spring of 1939. An affidavit attached to the deed, taken by plaintiff, states that the conveyance was a gift. The court found further: "When the deed was executed by the plaintiff he was mentally competent and fully understood the nature of the transaction and what he did. . . . The deed was not procured by the defendant from the plaintiff by any unfair advantage of plaintiff's age or physical condition. There was no undue influence or fraud on the part of the defendant which caused the plaintiff to convey his property to defendant."

As to the bank accounts, the chancellor found: One account, with a balance of $1,582.06, plaintiff, on April 5, 1939, withdrew and opened a new account in the name of his son and himself. The other account, with a balance of $1,255.65, was closed on December 7, 1937, and

plaintiff opened a new account in the name of himself and his son. The court below found that in addition to the real estate valued at $4,000, which plaintiff conveyed to defendant, "the plaintiff owned on September 3, 1936, and still owns five shares of Pennsylvania Railroad stock, five acres of land in New Jersey, value not stated; approximately $2,700 in cash; a Buick automobile and a Pennsylvania Railroad pension of $120.00 a month for the balance of his life."

The chancellor also found that "defendant did not have sole and absolute control of all of the money of the plaintiff" and that "her relationship in this respect to the plaintiff was that of a housekeeper." He also found that she "was not the business agent of the plaintiff" and that "the valuable services rendered by the defendant to the plaintiff prior to the execution of the deed by him to her on September 3, 1936, and duly recognized by the plaintiff constitute a sufficient consideration for the said deed."

In *Pusey's Est.*, 321 Pa. 248, 260, 184 A. 844, the lack of testamentary capacity to make a will and also the existence of undue influence was alleged. We said: "At the outset of this case we are confronted by a rule of this court which has the effect of a rule of law. *We will not retry this case.* The question for us to consider is, first, whether there is evidence to support the findings of fact and whether the findings of fact support the decree. The court below and the court in banc made a thorough review of all the evidence and arrived at certain findings. If the evidence supports the findings and the findings in turn justify the decree, the decree will not be set aside" (citing cases).

The findings of the court below were, after exceptions filed to the adjudication, affirmed by the court in banc. These findings of fact are overwhelmingly supported by the evidence contained in this record. The conclusions of law, which were also upheld by the court in banc, are all correct. Among the conclusions are these: "No

fraud, undue influence or imposition were practiced up-
on the plaintiff by the defendant causing him to execute
the said deed. The deed . . . is a valid conveyance
of the property. . . . The plaintiff is not entitled to
a decree directing the defendant to reconvey the prop-
erty to him. The plaintiff is not entitled to an account-
ing."

The decree dismissing the bill is affirmed at appellant's
cost.